UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CASSANDRA BRIGHT,

                Plaintiff,

      -against-

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

                Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
14-CV-2738 (JMA)

**FILED**
**CLERK**

3/1/2016 2:08 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Law Offices of Harry J. Binder and Charles E. Binder, P.C.
60 East 42nd Street
Suite 520
New York, NY 10165
By: Charles E. Binder
*Attorney for Plaintiff*

Loretta E. Lynch, United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
By: Gail A. Matthews, Assistant U.S. Attorney
*Attorney for Defendant*

**AZRACK, United States District Judge:**

      Plaintiff Cassandra Bright challenges the decision of the Acting Commissioner of Social Security, who concluded, after a hearing before an Administrative Law Judge, that plaintiff is not disabled for purposes of receiving supplemental security income under Title XVI of the Social Security Act. There is no dispute that plaintiff has a severe impairment of short bowel syndrome status post resection of a metastatic carcinoid tumor. The question is whether, despite this impairment, plaintiff had the residual functional capacity to perform sedentary work. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the reasons set

1

forth below, I hold that the ALJ's decision was based on substantial evidence and in accordance with the applicable legal standards. The Commissioner's motion for judgment on the pleadings is GRANTED and the plaintiff's motion for judgment on the pleadings is DENIED.

## I.   BACKGROUND

### A. Procedural History

Plaintiff filed an application for supplemental security income benefits ("SSI") on December 29, 2010, alleging disability since January 1, 2008, based on intestinal problems. (Administrative Transcript ("Tr.") 47–52, 144.) After her application was denied on initial review, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). In May 2012, plaintiff appeared with counsel and testified at the hearing. In June 2012, the ALJ denied plaintiff's SSI claim, based on his determination that she had a residual functional capacity ("RFC") for the full range of sedentary work, and she was not disabled. (Tr. 33–39.) The Appeals Council denied plaintiff's request for review in June 2013 and granted her additional time to file a civil action in April 2014. This appeal followed.

### B. Plaintiff's Surgery and Her Testimonial and Vocational Evidence

Born in 1968, plaintiff was 42 years old at her onset. (Tr. 47.) She completed the eleventh grade, and was enrolled in special education classes. (Tr. 148–49.) She began work as a fast food cashier in 1996, but stopped in October 2006 for reasons apparently unrelated to her complained of impairment. (Tr. 148–50.) Plaintiff reported that her condition became severe enough to prevent her from working on January 11, 2010. (Tr. 148.)

In December 2009, she was hospitalized at Brookhaven Hospital ("Brookhaven") for abdominal pain and anemia. (Tr. 206–22.) She was diagnosed with a large abdominal mass, possibly mesenteric in origin, with compression of the small bowel and small hydronephrosis, and

2

anemia secondary to chronic blood loss and history of menorrhagia. (Tr. 206.) Several days later, she went to Stony Brook Hospital ("Stony Brook") for abdominal pain. A CT angiography of her abdomen showed, *inter alia*, a large mesenteric mass. (Tr. 224–32.) On January 11, 2010, Dr. Philip Bao, an upper gastrointestinal oncological surgeon, performed exploratory laparotomy, with resection of the mesenteric mass, including a partial right colectomy with removal of terminal ileum and entire ileum, or the small intestines. (Tr. 231–33.)

At the May 2012 hearing before the ALJ, plaintiff testified about her alleged disability stemming from her surgery. Primarily, she testified that she cannot work because of consistent diarrhea that occurs after she eats. (Tr. 58.) She claimed that as soon as she eats, she goes to the bathroom, so she would rather be at home. (Tr. 58.) She testified that sometimes the diarrhea would be controllable. (Tr. 58.) Other times, it would not be, and she would have accidents. (Tr. 58–59.) She said she experiences diarrhea with all foods, though some foods, like bread, are better than others, and the doctor had put her on a diet, including avoiding junk food, to help manage the symptoms. (Tr. 59.)

She testified that her daily activities consist mostly of sitting or lying down and reading and watching TV. (Tr. 59–60, 62–64.) She lives with two of her children and their father. (Tr. 56.) She does not live with her grandchildren, but she cares for them three times a week for several hours while their mother works and until her other children come home from school. (Tr. 57–58.) She testified she cannot lift any of her grandchildren, who are ages three, two, and four months. (Tr. 57–58.) She no longer does laundry because she does not have the strength to lift it, and she can only do light housework, such as wiping off a table. (Tr. 60–61.) Her daughter shops for food and cooks. (Tr. 61.) She prefers not to shop because she is afraid she will have an accident and prefers that her daughter to do it. (Tr. 61.) She does not drive. (Tr. 61–62.) She also testified that

3

she has back and shoulder pain as well as headaches and nosebleeds. (Tr. 62, 64–65.) She claimed back pain prevents her from lifting anything more than five pounds and that her oncologist, Dr. Chu, had prescribed her oxycodone for back pain. (Tr. 62.) She testified her only current treatment is a monthly injection of Sandostatin, which is for her carcinoma. (Tr. 64.) She said she cannot stoop, i.e., bend at the knees and waist to lift something off the floor, because of back pain. (Tr. 69.)

## C. Medical Evidence

### 1. Treating Physicians

Plaintiff's primary physicians for treatment of her bowel syndrome throughout 2011 and 2012 were Dr. David Chu, an oncologist, and the surgeon, Dr. Bao. Unless otherwise noted, their accounts of plaintiff's condition and symptoms appeared in medical records.

#### a. Dr. Bao

According to Dr. Bao's discharge report from the January 2010 surgery, he removed the terminal ileum and entire ileum and diagnosed plaintiff with mesenteric mass (carcinoid tumor). (Tr. 232.) He prescribed flexeril, a muscle relaxant, and oxycodone, for pain. (Tr. 233.) He restricted her from heavy lifting or strenuous activity for at least four weeks. (Tr. 233.) At her postoperative follow up on January 28, 2010, she reported no diarrhea, but that she was eating one meal a day because of decreased appetite, and she had abdominal cramping. (Tr. 310.)

In May 2011, plaintiff had a "long-delayed follow up" with Dr. Bao. (Tr. 452.) He reported that she currently felt well. (Tr. 452.) He wrote that her main complaint was diarrhea, consistently occurring within fifteen to twenty minutes after eating. (Tr. 452.) He noted that this symptom was "less noticeable with certain foods, for example bread, but even vegetables induce this." (Tr. 452.) She weighed 128 pounds, up from a postoperative weight of 116 pounds. (Tr. 452.) Dr.

Bao assessed the diarrhea "may be more related to some short intestine, it is difficult to say." (Tr. 452.) Despite some recurrence of her disease, he did not recommend surgery and referred her to Dr. Chu for consultation. (Tr. 453.)

On the day of this visit, Dr. Bao filled out a form at the request of the Social Security Administration ("SSA"). (Tr. 303–07.) On the form, his treating diagnosis was listed as neuroendocrine tumor of the small bowel, with a current symptom of diarrhea. (Tr. 303.) He indicated that the expected duration and prognosis of the claimant's condition was a "lifetime diagnosis." (Tr. 303.) In response to whether there were limitations on physical activity, he wrote "patient has recent recurrence of disease . . . [t]reatment . . . to be managed by Dr. Chu & may pose side effects that will result in restriction of activities." (Tr. 305.) Dr. Bao checked off that plaintiff had no limitations on the ability to lift and carry, stand and/or walk, sit, and push and/or pull. (Tr. 305–06.) Dr. Bao did not weigh in on whether she had other limitations, "e.g., postural, manipulative, visual, communicative [or] environmental" limitations. (Tr. 306.)

In August 2011, Dr. Bao wrote plaintiff was doing clinically well and "occasionally has some bouts of diarrhea." (Tr. 454.) In December 2011, Dr. Bao wrote she has been doing well and had no change in gastrointestinal symptoms. (Tr. 455.) In March 2012, Dr. Bao reported she was doing very well and had no complaints. (Tr. 456.) She had pressure on her lower pelvis, relieved with bowel movements, but "no associated diarrhea, blood per rectum, or constipation." (Tr. 456.)

### b. Dr. Chu

Plaintiff reported to Dr. Chu for her first appointment in June 2011, and reported no diarrhea symptoms but shortness of breath upon exertion. (Tr. 355.) He noted possible recurrence of her carcinoid tumor. (Tr. 356.) In July 2011, she complained to him of severe diarrhea and

5

shortness of breath.  (Tr. 372.)  There were no complaints of fatigue.  (Tr. 355.)  He recommended monthly octreotide and also IV iron for her anemia.  (Tr. 374.)  In July, Dr. Chu also provided a letter to plaintiff's attorney.  (Tr. 341.)  He wrote that plaintiff has a history of metastatic carcinoid tumor and "[b]ecause of her disease, she has recurrent bouts of diarrhea as well as shortness of breath . . . .  Because of these reasons, she states that she is unable to work.  She also has abdominal pain; and with severe iron deficiency anemia, she has fatigue."  (Tr. 341 (emphasis added).)  In September 2011, plaintiff reported severe diarrhea again, but no fatigue.  (Tr. 379.)  Her weight was 121 pounds, down 3 pounds from her weight in June.  (Tr. 356, 380.)  In December 2011, Dr. Chu indicated that she had no symptoms of diarrhea or fatigue and that she weighed 127 pounds.  (Tr. 390.)  During the following three visits, occurring during February, March, and April of 2012, Dr. Chu noted no symptoms of diarrhea or fatigue.  (Tr. 403, 418, 423.)

   *3. Consulting Physician and Medical Examiner*

      *a. Dr. Lin*

At the behest of the SSA, Dr. Qun Lin examined plaintiff in February 2011.  Dr. Lin wrote, as plaintiff's chief complaint, that "ever since the surgery she continued having loose stool and also cannot eat anything in public because food or fluid runs right through her . . . ."  (Tr. 273.)  She also complained of intermittent abdominal pain and nausea.  (Tr. 273.)  Dr. Lin indicated plaintiff was able to cook fast food five times a week, do laundry once a week, and bathe and dress by herself.  (Tr. 273.)  Dr. Lin noted some issues with bending because of abdominal pain.  (Tr. 275.)  In her medical source statement, Dr. Lin noted no limitation on activity involving sitting, walking and standing; moderate limitation for activity involving reaching, pulling and pushing; and marked limitation for activity involving climbing, bending and lifting.  (Tr. 275.)  She also wrote that plaintiff should have easy access to a bathroom and recommended a separate evaluation

6

"to determine her endurance and exertion level due to significant GI symptoms." (Tr. 275.) No evaluation was ever done.

### b. Dr. Fulco

Dr. Osvaldo Fulco, who never examined plaintiff, testified as a medical expert for the SSA at the May 2012 hearing. He said plaintiff's January 2010 exploratory laparotomy, which included resection of the terminal ileum and the entire ileum, was significant as the cause of her current persistent diarrhea. (Tr. 70.) He noted controversy in the record because Dr. Chu stated she had diarrhea in July 2011, but not in December 2011. (Tr. 71.) He testified, "[i]t is reasonable to establish that claimant is under the moderate impairment." (Tr. 71.) He went on to state, "The RFC will be nonexertional. The symptoms of postprandial diarrhea are credible and they are most likely due to the ileum resection, that is short bowel syndrome. And, together with that, the fatigue is also credible." (Tr. 71–72.) In his opinion, "because of the need for interruptions without any warning," plaintiff's diarrhea and symptoms would interfere with her ability to complete a regular work schedule. (Tr. 72.) In his testimony, Dr. Fulco did not address any of the treating physicians' records from 2012.

## D. The ALJ's Decision

The ALJ applied the five-step process required by the regulations, described below, and denied plaintiff's application for benefits, based on his conclusion that she was not disabled. (Tr. 33–39.) At the fourth step, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform the "full range of sedentary work"; finding that plaintiff's purported "need to have easy access to a bathroom . . . is not supported by the medical evidence in the record, specifically progress reports from Dr. Chu in December of 2011 and in March and April of 2012," in which plaintiff had denied having diarrhea. (Tr. 38–39.) The ALJ supported his determination

7

with Dr. Chu's December 2011 report and 2012 reports, in which plaintiff had reported no symptoms of diarrhea, pain, or weight loss, and Dr. Bao's May 2011 report, in which she complained of diarrhea, but Dr. Bao prescribed no limitations on her physical activity. The ALJ gave "great weight" to both treating physicians' opinions and "far less weight" to that of Dr. Fulco, who never examined her. (Tr. 36.) He discounted Dr. Lin's conclusion that plaintiff had a marked limitation on lifting and found that this did not preclude plaintiff from lifting up to ten pounds, as required by sedentary work. Furthermore, the ALJ found plaintiff's testimony was not credible "as to the intensity, persistence and limiting effects of her symptoms" because they were not confirmed by her treating physicians' reports. (Tr. 37.) At the final step, the ALJ found that jobs exist in significant numbers in the national economy that she could perform. Therefore, he determined she was not disabled.

## I.   DISCUSSION

Plaintiff presents two arguments: (1) The ALJ failed to properly weigh the medical evidence and failed to properly determine her residual functional capacity; and (2) the ALJ failed to properly evaluate her credibility.

**A. Standard of Review**

A district court may set aside the determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine whether the findings are supported by substantial evidence, the

reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  The district court does not determine *de novo* whether plaintiff is disabled.  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004).  Rather, to the extent any findings are supported by substantial evidence, they "shall be conclusive."  42 U.S.C. § 405(g).  "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner."  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  However, the court "may not properly 'affirm an administrative action on grounds different from those considered by the agency.'"  Burgess, 537 F.3d at 128 (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)).

Generally, the claimant bears the burden of proving disability.  Id.  Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  For a person to be under a disability, the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The SSA established a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 416.920(a)(4).  The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must

9

find him disabled if (5) there is not another type of work the claimant can do." Burgess, 537 F.3d at 120 (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden on the first steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

When the ALJ possesses a "complete medical history, and the evidence received from the treating physicians [is] adequate for him to make a determination as to disability," the ALJ is not under an obligation to develop the record prior to denying a benefits claim. Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996). In contrast, and even when a claimant is represented, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history." Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999); see also Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (finding an ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding"); 42 § U.S.C. 423(b)(5)(B); 20 C.F.R. § 404.1512(d).

Unless the burden is on the Commissioner, when the ALJ makes specific findings, the ALJ may rely on the fact that no examining physician indicated that the claimant demonstrated a particular inability. See Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995) (finding that the ALJ could rely on an absence of a finding by any physician, other than by a properly discredited chiropractor, that the plaintiff was unable to sit for prolonged periods of time); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."); compare June v. Colvin, 12-CV-6461, 2013 WL 3759813, at *6–*7 (W.D.N.Y. July 15, 2013) (finding that the ALJ properly relied on the treating physicians' physical findings contained in medical records and the plaintiff's testimony

when the ALJ determined that the plaintiff's impairments did not prevent him from performing the physical requirements of sedentary work, even though the record lacked the treating physicians' specific RFC assessments) with Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 344 (E.D.N.Y. 2010) (finding that the ALJ lacked the necessary information to determine that claimant's arthritis imposed no limitations on claimant's abilities when the record contained no treatment records and opinions from treating physicians regarding his functional abilities and the ALJ did not discuss the arthritis's nature, severity, or effect on his functioning).

**B. Analysis**

*1. RFC Determination*

Plaintiff argues that the ALJ improperly weighed the opinions of her treating physicians when he found that she had no non-exertional limitations[1] preventing performance of the full range of sedentary work. The Commissioner argues that the ALJ adequately evaluated the treating physicians' opinions and other medical evidence in the record and that the evidence supported the ALJ's findings regarding the determination of her limitations and RFC.

As the primary support for her argument, plaintiff inaccurately asserts that Dr. Chu "specifically stated that Ms. Bright was unable to work as a result of her recurrent bouts of diarrhea, shortness of breath, abdominal pain, and fatigue." (Cross-Mot. J. Pleadings at 7; ECF No. 18.) However, as the Commissioner notes in her brief, Dr. Chu did not make a specific finding on plaintiff's ability to work[2]; he simply wrote that "[b]ecause of these reasons, she states that she is

---

[1] Non-exertional limitations or restrictions are those that "affect only your ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 416.969a(c). They include, *inter alia*, difficulty functioning because of anxiety or depression; difficulty maintaining concentration; difficulty in seeing or hearing; or "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." Id. By contrast, examples of exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 416.969a(a).

[2] The Commissioner concedes that other than this statement, Dr. Chu never opined on plaintiff's ability to work.

11

unable to work." (Tr. 341 (emphasis added).) Because Dr. Chu merely recounted plaintiff's own conclusion about her inability to work, that statement was not entitled to the deference that is ordinarily afforded to the findings of a treating physician. Moreover, given that plaintiff was the source of this conclusion, the ALJ did not have to explicitly address this point in his decision. And, even if this assessment about plaintiff's work ability could be characterized as Dr. Chu's own opinion, it still would not have a presumption of controlling weight because the question of whether a claimant is unable to work is ultimately a conclusion that is designated for the Commissioner's determination.[3]

The evidence provided by Dr. Chu allowed the ALJ to conclude that plaintiff did not have physical limitations precluding the RFC for sedentary work. The ALJ supported his decision with Dr. Chu's medical records. Plaintiff complained to Dr. Chu of severe diarrhea only in July and September 2011. Because Dr. Chu's other reports from the remaining six appointments indicated that plaintiff had denied any symptoms of diarrhea, the ALJ properly concluded that the claimant did not have the diarrhea's associated limitation: the need to have easy access to a bathroom.

Plaintiff also objects that the ALJ could not have relied on Dr. Bao's statements that she had no physical limitations because Dr. Bao did not specifically make a finding about the impact of her diarrhea and fatigue on her capacity to sustain work. However, the Commissioner correctly notes that plaintiff has the burden of proving her RFC. See Poupore v. Astrue, 566 F.3d 303, 306

---

[3] Under the "treating physician" rule, the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence. Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). If a treating physician's opinion is not given controlling weight, the ALJ must consider several factors and explain the weight given to that physician's opinion. Id.; 20 C.F.R. § 416.927(c). However, when a medical source states his or her opinion about an individual's ability to work, that opinion is not given controlling weight. See SSR 96-5P, 1996 WL 374183 (July 2, 1996) ("Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.").

(2d Cir. 2009) ("[A]t step five . . . the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity."). Thus, the Commissioner argues that it was entitled to rely on Dr. Bao's silence as to non-exertional limitations when no other treating physician explicitly opined on any limitations upon plaintiff's ability to work.[4]

In light of the treating physicians' silence and the other evidence provided in their medical records, the Court agrees with the Commissioner. The ALJ noted that the only instance in which Dr. Bao restricted plaintiff's physical activities was in January 2010, for the weeks immediately following her surgery. Furthermore, in Dr. Bao's RFC assessment from May 2011, Dr. Bao did address many potential limitations on plaintiff's activity. Of particular relevance, and contrary to the February 2011 report of the consulting expert, Dr. Lin, Dr. Bao noted that the plaintiff had no limitations on lifting and carrying, among other activities. Although Dr. Bao did not address whether plaintiff had any other limitations, such as postural, manipulative, visual, communicative, or environmental limitations, neither of her treating physicians' records implicate such limitations.

The ALJ was presented with diarrhea as the crucial symptom of plaintiff's impairment. The ALJ appropriately focused on the diarrhea symptoms and noted several reasons why her symptoms would not interfere with a normal work schedule. The ALJ noted plaintiff's testimony that her doctor had prescribed a diet that allowed her to better manage her symptoms. Plaintiff also testified she prefers to stay home because she fears having an accident. The ALJ recounted the testimony of her daily activities, noting that she attributed her inability to do certain things, such as sitting or standing for long periods of time, to back pain. Finally, from both treating

---

[4] The Court notes that because of the ALJ's affirmative duty to investigate, described supra, even the Commissioner's limited burden would not absolve an ALJ of the affirmative duty to investigate when there are obvious gaps in the record. The Court believes that there are no such material gaps here.

physicians' accounts, complaints of diarrhea appeared to be resolved (or at the very least subsiding) by December 2011.

Although plaintiff now protests that neither treating physician specifically addressed the effects fatigue may have had on her ability to work, Dr. Bao never noted that plaintiff complained of fatigue, and Dr. Chu affirmatively states "no fatigue" in each of his reports.[5] Furthermore, plaintiff did not testify at the hearing that fatigue prevented her from working; both she and the ALJ focused on the need to have easy access to a bathroom as the crux of her impairment. Plaintiff's other purported limitations, such as difficulty stooping or lifting, appear to be entirely unrelated to plaintiff's short bowel syndrome resulting from her resection. Rather, to the extent that plaintiff testified about any such limitations, they appear to have stemmed from plaintiff's unsupported complaints of back pain, discussed infra.

Plaintiff also argues that the ALJ's conclusion erroneously disregarded the conclusions of Dr. Fulco and Dr. Lin. However, "in evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight." See Cruz v. Sullivan, 912 F.2d 8, 13 (2d Cir. 1990). Here, the ALJ appropriately gave less weight to the opinions of Dr. Lin and Dr. Fulco. Although Dr. Lin and Dr. Fulco both expressed an opinion that plaintiff's impairment may impose non-exertional limitations that would prevent her from performing sedentary work, they were not plaintiff's treating physicians, and their particular opinions are not supported by the evidence in the record. The ALJ discounted Dr. Lin's assessed limitation on activity involving lifting because her conclusion that this limitation was "marked" was not further defined and was unsupported by medical evidence in the record. The Court also notes Dr. Lin examined plaintiff in February 2011, months before her complaints about diarrhea appeared to subside. Furthermore, plaintiff testified

---

[5] Dr. Chu mentioned fatigue only in his letter to plaintiff's attorney, and only in the context of plaintiff's anemia: "[W]ith severe iron deficiency anemia, she has fatigue." (Tr. 341.)

14

at the hearing that pain associated with lifting or bending resulted from back pain.

The ALJ also observed that the medical expert Dr. Fulco had never examined plaintiff, and thus declined to give Dr. Fulco's opinion of plaintiff's limitations more weight than the opinions and evidence provided by her treating physicians.  Notably, Dr. Fulco's testimony did not mention the physicians' reports from 2012, which indicated that plaintiff was not experiencing any symptoms.  Finally, a state agency medical consultant, Dr. Dorff, reviewed the record and specifically stated that Dr. Bao had found no physical limitations and restrictions and that, as his own conclusion, plaintiff could do at least sedentary work. (Tr. 332.)  Although not cited by the ALJ in his decision,[6] the Court is satisfied that the ALJ appropriately considered this consulting opinion, which was contrary to those of Dr. Fulco and Dr. Lin.  See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision.").

Therefore, for the reasons stated above, the ALJ's RFC determination was supported by substantial evidence.

*2. The ALJ's Evaluation of Plaintiff's Credibility*

On her second point, plaintiff argues that the ALJ failed to properly evaluate her credibility.  The ALJ found that "the claimant's medically determinable impairment could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not wholly credible as they are not confirmed by the reports" from her treating physicians, Dr. Chu and Dr. Bao. (Tr. 37.)  The ALJ

---

[6] As a seemingly alternative ground, the Commissioner argues in her brief that, though severe, the impairment did not meet the durational requirement because it was not an impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212, 215–16, 222 (2002) (explaining the regulation's interpretation that for an impairment to be disabling, the claimant must have an "inability to engage in any substantial gainful activity" for at least 12 months).  Although the record before the ALJ might well have supported such a finding, the ALJ did not explicitly find that plaintiff was not disabled based on insufficient duration of her impairment.

15

indicated that plaintiff's complaints of back pain, for which she claimed Dr. Chu had prescribed oxycodone, were not confirmed in the record. He also pointed out that neither physician restricted her physical activity—other than Dr. Bao in the weeks immediately after her surgery—and that their reports and her testimony showed that her symptoms were manageable.

When determining a claimant's RFC, the ALJ must take into account the claimant's subjective complaints of pain and other limitations, but he is not required to accept them without question. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Under the regulations, the ALJ may exercise his discretion, following a two-step process to weigh the claimant's testimony: (1) the ALJ must decide whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce [claimant's] symptoms"; and (2) if so, he must consider the extent to which such symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(b)–(c); see also, Genier, 606 F.3d at 49. "A finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988).

Contrary to plaintiff's contentions, the ALJ's decision to discount plaintiff's testimony was not entirely devoid of an explanation. He correctly noted that her claims of back pain were unsubstantiated by the record; it did not appear she had ever complained to any doctor of this symptom. Although she testified Dr. Chu prescribed oxycodone for back pain, the only physician to ever prescribe her oxycodone was Dr. Bao, which he prescribed only for a short duration immediately after her surgery. When addressing her testimony about her symptoms of diarrhea, the ALJ focused on the inconsistencies between her statements and what she had reported to her

doctors in December 2011 and 2012.[7] The ALJ also remarked that plaintiff testified her symptoms would be better or worse with certain foods, such as bread, and that her doctor had prescribed a diet. Plaintiff also gained weight after her operation and consistently maintained her weight. There is substantial evidence to support the ALJ's credibility assessment, and the ALJ properly considered multiple factors pertaining to plaintiff's credibility. For these reasons, the ALJ did not err when he discredited plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms.

## II.   CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is DENIED, and defendant's motion for judgment on the pleadings is GRANTED. The Clerk is directed to enter judgment in favor of defendant, dismissing the complaint.

**SO ORDERED.**

Dated: March 1, 2016
Central Islip, New York

                                                        /s/    (JMA)
                                                  JOAN M. AZRACK
                                                  UNITED STATES DISTRICT JUDGE

---

[7] The ALJ arguably erred when he stated that plaintiff had not complained of recurrent bouts of diarrhea to her doctors since July 2011. In fact, she complained to Dr. Chu of severe diarrhea in September 2011. However, the Court finds this error was harmless because Dr. Bao reported only occasional bouts of diarrhea in August (and possibly December 2011), and Dr. Chu reported no complaints of diarrhea from December 2011 onward.